FILED

2013 Aug-27  AM 11:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JAMES GRAVELING AND LORI GRAVELING,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **Case No.: 2:13-cv-120-VEH** ) |
| **BANKUNITED N.A., et al.,** | ) ) |
| **Defendants.** | ) |

---

## <u>MEMORANDUM OPINION</u>

Before the court are Motions To Dismiss filed by Defendants BankUnited, N.A. ("BankUnited"), Castle Mortgage Company ("Castle"), Sirote & Permutt ("Sirote"), Ryan Daugherty ("Mr. Daugherty"), Ginny Rutledge ("Ms. Rutledge"), and Andrew P. Benefield ("Mr. Benefield") (collectively, "Defendants"). (Docs. 33, 35, 37). Also before the court is Defendants' joint Motion To Strike (Docs. 49, 52, 53) various exhibits attached to the Gravelings' Responses (Docs. 43, 46, 47) to their Motions to Dismiss. For the following reasons, the Defendants' Motion to Strike is **GRANTED**, and their Motions to Dismiss are **GRANTED in part and DENIED in part**.

I.        **Procedural History**

The Plaintiffs, James and Lori Graveling (the "Gravelings"), initiated this action on January 18, 2013. (Doc. 1). They are proceeding *pro se*. On January 24, 2013, the court *sua sponte* ordered repleader. (Doc. 2). On February 27, 2013, the Gravelings filed their first Amended Complaint (Doc. 6) ("FAC"), which they "supplemented" on February 28, 2013. (Doc. 8). The Defendants filed Motions To Dismiss on March 22, March 25, and April 8, 2013. (Docs. 12, 13, 18). On April 30, 2013, the Gravelings filed their second Amended Complaint ("SAC"). (Doc. 28). On May 7, 2013, the court termed as moot, in light of the SAC, the then-pending Motions to Dismiss. (Doc. 34).

On May 3, 13, and 14, 2013, the Defendants timely filed new Motions To Dismiss. (Docs. 33, 35, 37). The Gravelings filed responsive oppositions on May 28 and June 4, 2013. (Docs. 43, 46, 47). Defendants replied on June 10 and June 14. (Docs. 50, 51, 54, 55).

## II.     Standards of Review

### A.     Motions to Dismiss

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."

2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). When ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

### B.    Pro Se Plaintiffs

As noted, the Gravelings are proceeding *pro se* in this action. "[A] document filed *pro se* is to be liberally construed . . . and a pro se complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Williams v. Quality Filters, Inc.*, Civil Action No. 07-0015-WS-B, 2007 WL 4219201, at *2 (S.D. Ala. Nov. 27, 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even so, "a pro se complaint still must state a claim upon which the Court can grant relief." *Farkas v. Suntrust Mortgage Inc.*, Civil Action No. 10–0512–CG–M, 2010 WL 5525359, at *4 (S.D. Ala. Dec. 15, 2010) (citation omitted), *report and recommendation adopted by* 2011 WL 39048 (S.D. Ala. Jan. 5, 2011), *aff'd*, 447 F. App'x 972 (11th Cir. 2011) (unpublished).

## III.   Motion To Strike

The Defendants jointly move to strike the following documents:

From the "Evidentiary Material in Support of Response to Castle's Motion to Dismiss" (Doc. 44)

•   Exhibit A – the text of Public Law 97-280

•   Exhibit B – "A List of Maxims of Equity"

•   Exhibit C – "Offer Towards Settlement Agreement"

•   Exhibit D – Affidavit of William McCaffrey

•   Exhibit G – Affidavit of Franky Rodgers

•   Exhibit H – an entry from *The World Book Encyclopedia*

•   Exhibit I – an article titled "Banking Secrets That Banks Don't Want Published"

4

- Exhibit K – an article titled "Banking Systems"

From the Gravelings' Response (Doc. 46) to BankUnited's Motion to Dismiss

- Exhibit 1 – an article titled "Merscorp Lacks Right to Transfer Mortgages, Judge Says"

- Exhibit 2 – a printout from a website titled "MERS 101"

- Exhibit 3 – an article from *Wisconsin Lawyer*

The Defendants variably argue why, under the Federal Rules of Evidence, the above materials are irrelevant, unauthenticated, hearsay, or otherwise inadmissible. Without addressing these arguments, the court concludes that it will exercise its discretion under Rule 12(f) of the Federal Rules of Civil Procedure to strike these documents from its consideration at this stage of the litigation. When considering a Motion to Dismiss, a district court is generally "constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment." *Crowell v. Morgan, Stanley, Dean Witter Servs. Co., Inc.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000) (citations omitted). Rule 12(f) states that the court may "on its own" decide to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Accordingly, the court finds the attachments submitted by the Gravelings above to

be "immaterial" to its disposition of Defendants' Motions To Dismiss here. The court will therefore **GRANT** Defendants' Motion To Strike these documents.

The court will note the following point, however. The Eleventh Circuit "has recognized an important qualification to [the "four corners" rule] where certain documents and their contents are undisputed: 'In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.'" *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prev.*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)). In this case, the Gravelings attached various documents as exhibits to their original Complaint and their FAC – the authenticity of which Defendants do not dispute. Unlike the attachments struck above, these documents are evidently central to the Gravelings' claims, as the Gravelings frequently refer to them in the various iterations of their Complaint. The court thus will treat these documents as part of their SAC for Rule 12(b)(6) purposes. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

## IV.   Motions To Dismiss

### A.   Introduction

The Gravelings have filed six counts in this action:

- Fraud (against Castle)

- Fraud (against Coastal)

- Wrongful Foreclosure (against BankUnited)

- Illegal Foreclosure Sale Auction (against Mr. Benefield)

- Refusal to Cease Debt Collecting, in violation of the Fair Debt Collection Practices Act ("FDCPA") (against Coastal)

- Refusal to Cease Debt Collecting, in violation of the FDCPA (against Sirote, Ms. Rutledge, and Mr. Daugherty)

Doc. 28 ¶¶ 181-260.[1] Coastal has not filed a Motion To Dismiss, so the court will only examine the legal sufficiency of those counts against Castle, BankUnited, Mr. Benefield, Sirote, Ms. Rutledge, and Mr. Daugherty.

**B.** **The Gravelings' fraud claim against Castle must be dismissed because it is impermissibly vague and implausible**.

The Gravelings have not plausibly claimed fraud against Castle. Under Alabama law, a plaintiff must prove the following elements to establish fraud: (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. *Mantiply v. Mantiply*, 951 So. 2d 638, 653 (Ala. 2006) (citation

---

[1]The court has grouped the Gravelings' counts thematically – rather than in the sequential order they appear in the Complaint – so as to streamline the analytical discussion that takes place below.

omitted); *see also Drummond Co. v. Walter Indus., Inc.*, 962 So. 2d 753, 788 (Ala. 2006) (similar) (citation omitted) ; *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 673 (S.D. Ala. 2005) ("[P]laintiffs' fraud claims generally require a showing that defendants made a false representation concerning a material fact, that defendants knew the statement was false or made it in reckless disregard for its truth or falsity, that the plaintiff reasonably relied upon such statement, and that the plaintiff was damaged by virtue of such reliance.") (citation omitted).

In Count #1 of their SAC, the Gravelings claim that Castle falsely represented that "they were a lender who would give us borrowers a 'loan.'" Doc. 28 ¶ 183. According to the Gravelings, Castle did so knowingly and intended that the Gravelings "should act upon Castle's statements regarding said loan." *Id.* ¶¶ 186-87. The Gravelings further assert that they reasonably relied on these false representations to their great detriment. *Id.* ¶¶ 189-192. They claim that they "would never [have] consented to said contract loan had Castle given full disclosure." *Id.* ¶ 194.

This rote recitation of the fraud elements is impermissible under *Iqbal* and *Twombly*. The Gravelings do not specify how Castle's loan representations were false or how Castle failed to give them full disclosure. Instead, they refer the court back to their "general factual allegations." Doc. 28 ¶ 181. These assertions also fail to sustain

8

their fraud claim. The Gravelings maintain the following:

- Castle did not put any of their own money at risk in the alleged loan. *Id.* ¶ 22.

- Castle did not loan gold or silver to the Gravelings. *Id.* ¶ 23.

- Castle did not loan its own money to the Gravelings. *Id.* ¶ 24.

- Castle did not loan its depositors' money to the Gravelings. *Id.* ¶ 25.

- Castle did not loan Federal Reserve notes to the Gravelings. *Id.* ¶ 26.

- Castle did not disclose to the the Gravelings that Castle was not in fact going to loan anything to the Gravelings. *Id.* ¶ 28.

- Castle did not "uphold their end of [the loan contract] as they presented that they would." *Id.* ¶ 34.

- Castle "switched currency" on the Gravelings. *Id.* ¶ 38.

- Castle obtained the Gravelings' mortgage note without investing the money allegedly loaned to the Gravelings. *Id.* ¶ 42.

- Castle made the Gravelings "depositors rather than borrowers." *Id.* ¶ 43.

Thus, according to the Gravelings, "Castle through fraud in the inducement misled [them]" into accepting the supposed loan terms. *Id.* ¶ 49.

These allegations do not cure the impermissible vagueness of the Gravelings' accusations. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citing *Brooks*, 116 F.3d at 1371). The Gravelings' Complaint falls short of this standard. *See Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 567 (11th Cir. 1994) ("[Fraud] pleading must include facts as to time, place, and substance of the defendant's alleged fraud.") (citation omitted). They state that they "will show further evidence of Castle's defrauding [them] through discovery" and that "by Discovery [they] will seek to uncover the truth." Doc. 28 ¶¶ 36, 39. Such promises are inadequate to salvage this claim. *See Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir.1991) ("Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

Even if the allegations were not impermissibly vague, the court would still dismiss them. The Gravelings have serious objections to the way in which

commercial institutions like Castle operate in this country. This is clear from their SAC and from their prior filings with the court. But, they simply have not articulated a plausible fraud claim against Castle *in this case*. They do not dispute that Castle loaned them the funds necessary to purchase the home upon which BankUnited eventually foreclosed. In return, the Gravelings executed a mortgage on that home to secure the loan. All of this is true *even if* they accurately question the mechanics of how Castle originated, processed, and recorded that loan internally. Their SAC thus does not credibly show that they were fraudulently induced into accepting Castle's loan. The court would therefore dismiss the fraud claim against Castle on this alternative ground.

### C.   The Gravelings' unlawful foreclosure claim must be dismissed because it incorrectly reads Alabama law.

In Count #5, the Gravelings allege that BankUnited unlawfully foreclosed on their home for the following reasons:

- BankUnited "failed or refused to provide validation of a valid loan from inception, to provide ledger accounts and books, to provide wet ink signature original note and mortgage, to provide evidence of being holder in due course." Doc. 28 ¶ 239.

- It does "not fall within any of the classifications of holders in due course on the subject loan." *Id.* ¶ 240.

- It has "not suffered any financial loss relating to the loan." *Id.* ¶ 241.

- It did not have legal standing to initiate the foreclosure. *Id.* ¶ 242.

- It foreclosed despite "knowing said foreclosure was unlawful and wrongful and despite Plaintiffs disputes with them." *Id.* ¶ 243.

- It used an unlicensed auctioneer to perform the foreclosure auction. *Id.* ¶ 244.

"Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage." *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012). "A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Savings and Loan Assoc.*, 607 So. 2d 180, 182 (Ala. 1992) (citations omitted). In *In re Sharpe,* 391 B.R. 117 (Bankr. N. D. Ala. 2008), the federal bankruptcy court proposed the following as factors to consider as elements of a wrongful foreclosure claim under Alabama law: whether (1) the actions of the mortgagee were either outside the boundaries of the foreclosure or taken for some purpose other than to secure the debt owed by the mortgagor; (2) the actions of the mortgagee were for some ulterior motive; (3) the power of sale was perverted or used for the mortgagee's or someone else's purpose; or (4) the mortgagee had an ill motive. 391 B.R. at 152–153.

These elements are not necessary to state an unlawful foreclosure claim, nor

are they exhaustive of what facts a plaintiff might invoke in such a suit. The court instead characterized them as guidelines based on actions that Alabama courts have considered wrongful foreclosure. *Id.* at 153 n.40. Nevertheless, "[u]nder Alabama law, if an action by a mortgagee was *for the purpose of securing the debt owed by the mortgagor*, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure." *Id.* (emphasis in original).

The Gravelings do not dispute that BankUnited foreclosed on their home so as to secure the debt they believed was owed to them. Rather, the Gravelings contest the predicate requirement that BankUnited be a valid "mortgagee." The court will thus examine the legal theories underlying this argument so as to show why it considers them misinterpretations of Alabama law.

### 1.    Validation

The Gravelings heavily emphasize that BankUnited disregarded its legal obligation to "validate" their supposed debt by providing them with the "wet-ink," original copies of their signed Note and Mortgage. *See, e.g.*, Doc. 28 ¶ 165. In prior filings, they cited Uniform Commercial Code ("U.C.C.") Sections 3-309 and 3-501 in favor of their argument. *See* Doc. 6 at 11. Section 3-309 dictates that "a person seeking enforcement of an instrument . . . must prove the terms of the instrument and the person's right to enforce the instrument." U.C.C. § 3-309(b). Section 3-501

addresses "presentment," which it defines as "a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee." U.C.C. § 3-501(a). The section further states, "[u]pon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made." U.C.C. § 3-501(b)(2). The comparable Alabama Code provisions model this language. *See* Ala. Code §§ 7-3-309(b), 7-3-501.

The Gravelings argue that BankUnited's disclosure to them of photocopies of the signed Note and Mortgage was legally insufficient under this language. *See* Doc. 28 ¶¶ 145-146. But, they do not marshal any Alabama authority that specifically concludes that photocopies are legally insufficient. And they do not adequately rebut the considerable case law suggesting that Alabama does *not* require production of the original instrument *in order to institute foreclosure*. *See, e.g.*, *Douglas v. Troy Bank & Trust Co.*, No. 2110053, 2012 WL 3631148, at *3 (Ala. Civ. App. Aug. 24, 2012) (deeming the plaintiff's "show me the note" theory "suspect" and finding "no

14

authority in which a nonjudicial foreclosure has been held invalid for failure to produce or present original documentation evidencing the underlying debt and security for repayment thereof") (footnote omitted). Further, the Eleventh Circuit has stated the following on the subject:

> A foreclosure is an action on a mortgage and, as such, is not governed by the [U.C.C.] . . . Alabama's foreclosure statute sets forth the requirements for conducting a non-judicial foreclosure under the 'power of sale' contained in the mortgage, *but the statute does not provide a cause of action for a mortgagor to require the mortgagee to establish proof of claim prior to initiating the foreclosure.*"

*Farkas v. SunTrust Mortgage, Inc.*, 447 F. App'x 972, 973 (11th Cir. 2011) (unpublished) (emphasis added) (citations omitted).

The Gravelings' response to this argument fails. They cite various judicial decisions and statutory provisions from jurisdictions outside Alabama. *See* Doc. 47 at 34-37. These citations simply do not reveal a "wet-ink" validation requirement *under Alabama law*. Thus, even though BankUnited never produced the original Note and Mortgage for the Gravelings, the Gravelings cannot attack their home's foreclosure on this ground.

### 2.    Standing

The Gravelings deny BankUnited's standing to foreclose on their home on a related basis. They claim that BankUnited was not a "holder in due course" of the

Note and Mortgage they originally signed with Castle. *See, e.g*, Doc. 28 ¶ 240. Under

Alabama law, a "holder in due course" generally denotes the holder of any instrument

so long as:

1. The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

2. The holder took the instrument (I) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 7-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 7-3-305(a).

Ala. Code § 7-3-302. The Gravelings do not challenge BankUnited's standing on any

of these grounds. Rather, they suggest that BankUnited never possessed the original,

"wet-ink" Note and Mortgage. *Id.* ¶¶ 147-148. They further maintain that "an original

is required to be able to establish a valid claim for being holder in due course." *Id.*

¶ 101.

The court does not need to settle this issue. Even were the Gravelings'

assertions correct, BankUnited would still have been qualified to foreclose on their

home. Alabama law defines a "person entitled to enforce" an instrument as either: (1)

the holder of the instrument, (2) a nonholder in possession of the instrument who has

the rights of a holder, or (3) a person not in possession of the instrument who is

entitled to enforce the instrument pursuant to Section 7-3-309 or 7-3-418(d). Ala. Code § 7-3-301. Thus, "a person may be a person entitled to enforce the instrument *even though the person is not the owner of the instrument or is in wrongful possession of the instrument*." *Id.* (emphasis added).

A "holder" includes a person possessing a negotiable instrument if that instrument is payable to bearer. Ala. Code § 7–1–201(21)(A). If a negotiable instrument has been endorsed in blank – as the Gravelings' Note had been, *see* Doc. 13, Ex. A, at 4 – the instrument "becomes payable to 'bearer' and may be negotiated by transfer of possession alone . . ." Ala. Code § 7–3–205(b). Possession of a note payable to order and endorsed in blank is prima facie evidence of ownership. *See Berney v. Steiner*, 108 Ala. 111, 116 (1896). Because it possessed the Gravelings' Note endorsed in blank, BankUnited could therefore initiate foreclosure proceedings on the Gravelings' home. Any defects in the chain of title would not provide the Gravelings with a lawful defense under Alabama law. *See Thomas v. Wells Fargo Bank, N.A.*, 116 So. 3d 226, 233-34 (Ala. Civ. App. 2012) (dismissing the fact that the plaintiffs' note and mortgage failed to contain complete chains of indorsements or assignments as a defense to the defendant's ejectment action), *cert. denied*, (Ala. Jan. 4, 2013) (No. 1120197).

**3.    Conclusion**

The Gravelings have not articulated a plausible unlawful foreclosure claim against BankUnited. None of their factual assertions, even if true, suffice to undermine BankUnited's foreclosure authority under Alabama law. The court must therefore dismiss the claim

### D.  The Gravelings' claim against Mr. Benefield must be dismissed because it is unsupported by Alabama law.

In Count #4, the Gravelings allege that Mr. Benefield, as BankUnited's agent, unlawfully performed the foreclosure sale auction on their home. They point primarily to the fact that he was unlicensed and that the Alabama Code requires a State-issued license to "act as an auctioneer" or to "engage or assume to engage in the auction business." *Id.* ¶¶ 227-231 (citing Ala. Code § 34-4-20). Putting aside whether this provision provides the Gravelings with a private right of action against Mr. Benefield, BankUnited rightfully responds by referencing a specific Code provision that exempts those acting as auctioneers "in sales at public outcry" for "sales of property conveyed by . . . mortgage." Doc. 35 ¶ 25 (citing Ala. Code § 34-4-27(2)). In reply, the Gravelings state the following:

> Even were it true that Andrew P. Benefield was not required to have an Alabama license to perform said foreclosure sale at auction, the fact of his being warned that it was an unlawful foreclosure, that it was under a federal land patent, and that the matter had been filed into a federal court was more than enough warning for him to rightly refuse to continue with the foreclosure sale.

18

Doc. 46 at 27. While the Gravelings might be correct that Mr. Benefield's forbearance would have been warranted as a matter of personal courtesy, they have not stated a legal basis for relief. The court must therefore dismiss the claim.

### E. The Gravelings have stated plausible FDCPA claims against Sirote and Ms. Rutledge but not Mr. Daugherty.

In Count #6, the Gravelings allege that Sirote, Ms. Rutledge, and Mr. Daugherty violated the FDCPA by continuing their debt collection efforts after the Gravelings separately notified them that they were disputing the debt. The court finds that this claim is plausible only against Sirote and Ms. Rutledge.

### 1. FDCPA Generally

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors . . ."15 U.S.C. § 1692(e). The FDCPA both requires and forbids specific conduct by debt collectors. For example, under the FDCPA every initial debt communication must be accompanied within five days by a written debt validation notice that provides the debtor with thirty days to dispute the debt. 15 U.S.C. § 1692g(a). The FDCPA also prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Importantly, the Act "does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *LeBlanc v. Unifund*

19

*CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (per curiam) (citations omitted).

Further, a single violation of the statute is sufficient to establish civil liability. *Bentley*

*v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (citing 15 U.S.C. §

1692k).

In order to prevail on an FDCPA claim, a plaintiff must prove that: "(1) the

plaintiff has been the object of collection activity arising from consumer debt, (2) the

defendant is a debt collector as defined by the FDCPA, and (3) the defendant has

engaged in an act or omission prohibited by the FDCPA." *Kaplan v. Assetcare, Inc.*,

88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000) (quoting *Sibley v. Firstcollect, Inc.*,

913 F. Supp. 469, 470 (M.D. La.1995)).

### 2.    "Consumer Debt" & "Collection Activity"

The Gravelings have stated sufficient facts revealing that they were "the object

of collection activity arising from consumer debt." *Id.* The FDCPA broadly defines

the word "debt":

> The term "debt" means any obligation or alleged obligation of a consumer to
> pay money arising out of a transaction in which the money, property,
> insurance, or services which are the subject of the transaction are primarily for
> personal, family, or household purposes, whether or not such obligation has
> been reduced to judgment.

15 U.S.C. § 1692a(5). This definition clearly covers the Gravelings' payment

obligations arising from the promissory note at issue here. *See Reese v. Ellis, Painter,*

20

*Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) ("The promissory note is a 'debt' within the plain language of § 1692a(5)) (citations omitted).

The Gravelings were also the object of collection activity. According to their SAC, Castle "allegedly transferred the 'servicing of . . . mortgage loan' to [Coastal] on or near October 15, 2007." Doc. 28 ¶ 50. The Gravelings originally paid Coastal $49,820.50 "because they believed themselves obligated" to do so. *Id.* ¶ 51. Once they "learned some of the fraudulent nature of Castle's alleged loan," however, they discontinued payments. *Id.* ¶¶ 52-56. They instead sent Coastal a "Notice of Dispute of Alleged Debt" on September 16, 2011, demanding "validation" of their supposed debt under the FDCPA. *Id.* ¶ 57.

Coastal at first addressed the Gravelings with debt collection letters on their own stationery. *See, e.g.*, Doc. 1, Ex. A. At some point, though, Coastal engaged Sirote, a law firm located in Birmingham, Alabama, to assume this duty. According to the Gravelings, "Ginny Rutledge, attorney at Sirote, acted for [Coastal] in continuing debt collection actions begun by [Coastal] against [them]." Doc. 28 ¶ 66. Ms. Rutledge, on behalf of Sirote, wrote the Gravelings letters informing them that they had defaulted. *Id.* ¶ 72. Specifically, Ms. Rutledge sent a letter titled "Notice of Acceleration of Promissory Note and Mortgage," dated March 12, 2012, on Sirote letterhead to the Gravelings. Doc. 6, Ex. L. The letter notified them that Sirote was

accelerating the Gravelings' alleged debt to Coastal and that it was commencing foreclosure. *Id.* Importantly, the letter also stated, "This letter is an attempt to collect a debt, and any information obtained will be used for that purpose." *Id.* These actions plausibly qualify as "debt collection activity."*See Reese*, 678 F.3d at 1218 ("A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest."); *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) (treating a letter seeking payment on a promissory note secured by a mortgage as "an attempt at debt collection" within the meaning of the FDCPA).

The Gravelings' SAC is not convincing, however, that Mr. Daugherty subjected them to collection activity. He does not appear in the document until after the Gravelings filed a "Petition for Declaratory and Injunctive Relief" in Saint Clair County Circuit Court to enjoin Coastal's scheduled foreclosure on their home. *See* Doc. 28 ¶ 110. On June 12, 2012, the Gravelings claim that Mr. Daugherty, an attorney at Sirote, appeared in said court on behalf of Coastal to file a Motion to Dismiss the Gravelings' Petition. *Id.* ¶ 114. Mr. Daugherty also appeared at another hearing on July 10, 2012, where he "represented [Coastal] as being alleged holder in due course and insisted that [Coastal] would proceed forward with foreclosure sale."*Id.* ¶¶ 122-23. He further argued against the Gravelings' injunction by

contesting their legal theory of validation. *Id.* ¶¶ 130-31. The court does not believe this conduct qualifies as "debt collection activity." According to the Gravelings, Mr. Daugherty merely appeared in court to defend his client from a legal action filed against it. That the legal action concerned an upcoming home foreclosure related to a mortgage does not suffice to classify his actions as debt collection activity. *See Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009) (unpublished) (determining that "foreclosing on a security interest is not debt collection activity for the purposes of" the FDCPA").[2]

### 3.    Debt Collectors

The Gravelings have also sufficiently alleged that Sirote and Ms. Rutledge acted as "debt collectors" under the FDCPA. The Act defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . .

15 U.S.C. § 1692a(6) (emphasis added). "So a party can qualify as a 'debt collector'

---

[2]*But see Reese*, 678 F.3d at 1218 n.3 ("[W]e do not reach the question of whether enforcing a security interest is itself debt-collection activity."). The Eleventh Circuit in *Reese* reserved the question stated above in a narrow factual scenario: that is, one in which a debt collector sends a letter to the debtor that *only* addresses the enforcement of a security interest. *See id.* ("That is, we do not decide whether a party enforcing a security interest *without demanding payment* on the underlying debt is attempting to collect a debt . . .") (emphasis added). The opinion does not suggest that non-communicative legal conduct related solely to the enforcement of a security interest – such as appearing in court – constitutes debt-collection activity. This court is persuaded by *Warren* that such actions, including Mr. Daugherty's here, do not qualify.

either by using an 'instrumentality of interstate commerce or the mails' in operating a business that has the principal purpose of collecting debts or by 'regularly' attempting to collect debts." *Reese*, 678 F.3d at 1218 (quoting 15 U.S.C. § 1692(a)(6)).

The Gravelings claim that Sirote is "a corporation doing law work in the STATE OF ALABAMA" and that it "is a third party debt collector." Doc. 28 ¶ 7. They further claim that Ms. Rutledge is an attorney with Sirote and "served as alleged counsel acting in her individual capacity and in behalf of Sirote for alleged clients" – in this case, Coastal and BankUnited. *Id.* ¶ 9. As noted above, Coastal first engaged Sirote for the purpose of collecting on the loan it was sold by Castle. Doc. 12 ¶ 8. Coastal then sent the Gravelings a "Notice of Servicing Transfer" on June 21, 2012, "stating that they had transferred the servicing of alleged mortgage loan to" BankUnited. Doc. 28 ¶ 118. Although it is unclear whether this letter was sent by Ms. Rutledge on Sirote letterhead, the facts later reveal that BankUnited retained Sirote to continue debt collection activities and to initiate foreclosure proceedings on its behalf. Doc. 12 ¶¶ 12-13. These asserted facts, if true, safely qualify Sirote and Ms. Rutledge as "debt collectors" under the statutory definition outlined above. Moreover, in their Motion To Dismiss, Sirote and Ms. Rutledge do not deny this designation. The court will thus move onto the final stage of its analysis, which *is* highly disputed.

24

### 4.    Duty to Cease Communication

The Gravelings have plausibly alleged that Sirote and Ms. Rutledge violated

the FDCPA by continuing their communications with the Gravelings after the latter

had contested their debt. The relevant provision of the FDCPA reads, in relevant part:

> If a consumer notifies a debt collector in writing that the consumer refuses to
> pay a debt or that the consumer wishes the debt collector to cease further
> communication with the consumer, the debt collector shall not communicate
> further with the consumer with respect to such debt, except--
>
> > (1) to advise the consumer that the debt collector's further efforts are
> > being terminated;
> >
> > (2) to notify the consumer that the debt collector or creditor may invoke
> > specified remedies which are ordinarily invoked by such debt collector
> > or creditor; or
> >
> > (3) where applicable, to notify the consumer that the debt collector or
> > creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c(c). As noted, when they concluded that Castle had fraudulently

induced them into signing the original loan, the Gravelings stopped paying Coastal

the designated payments. Doc. 28 ¶¶ 52-56. They sent Coastal a formal dispute notice

on September 16, 2011, which demanded that Coastal validate the debt. *Id.* ¶ 57.

According to their SAC, Coastal still sent them a letter warning of default. *Id.* ¶ 62.

It further "continued debt collection activities . . . despite Plaintiffs dispute affidavits

and citations of FDCPA prohibitions." *Id.* ¶ 64. Once Coastal had engaged Sirote, Ms.

Rutledge, "acted for [Coastal] in continuing debt collection actions begun by

[Coastal]" against the Gravelings. *Id.* ¶ 66. She sent them the above-referenced letter on March 12, 2012, notifying them of the acceleration of their debt and attempting to collect on it. Doc. 6, Ex. L. Ultimately, according to the Gravelings, "Sirote and [Ms. Rutledge] did not discontinue debt collection actions despite [the Gravelings'] dispute demanding validation via FDCPA." *Id.* ¶ 71. Only after the Gravelings' last letter/affidavit did Sirote and Ms. Rutledge cancel the foreclosure sale and say they would provide validation. *Id.* ¶¶ 77-78. The Gravelings emphasize that, before this occurred, "both [Coastal] and its counsel in Sirote and [Ms. Rutledge] had been involved in debt collection activities despite better knowledge via Plaintiffs repeated dispute affidavits." *Id.* ¶ 80.

These facts, if true, plausibly suggest that Sirote and Ms. Rutledge violated § 1492c. The Gravelings repeatedly notified Coastal that they were refusing to pay their purported debt. When Sirote agreed to represent Coastal in the latter's debt collection efforts respecting the Gravelings, it should have apprised itself of its client's past history with the Gravelings. As debt collectors on behalf of Coastal, Sirote and Ms. Rutledge should have known their legal responsibilities in that role concerning debtors like the Gravelings who dispute their debt. Apart from this, the Gravelings assert that they *reminded* Sirote and Ms. Rutledge of their duty to cease communicating with them. And yet Sirote and Ms. Rutledge continued doing so,

according to the Gravelings.

In their Motion To Dismiss, Sirote and Ms. Rutledge do not challenge this factual rendition. Rather, they argue that their conduct qualified under one of the exceptions listed in § 1492c. Doc. 37 ¶ 17. They specifically cite those provisions that permit a debt collector to continue communicating with an objecting debtor only so as (1) "to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor" and (2) "to notify the consumer that the debt collector or creditor intends to invoke a specified remedy." *Id.* (citing 15 U.S.C. § 1692c(c)(2)-(3)). Sirote and Ms. Rutledge claim that "Sirote's communications with the Plaintiffs were designed to alert the borrowers that the mortgagee may invoke and in fact was invoking the right to foreclose as spelled out in the Mortgage." *Id.*

After reviewing Ms. Rutledge's March 12, 2012, letter, the court finds this argument unpersuasive. One purpose of the letter was certainly to warn the Gravelings of the scheduled foreclosure on their home. But, as noted above, another clear purpose was to collect on the debt. The letter's final paragraph read in full:

> We will assume this debt to be valid unless it is disputed within thirty days after you receive this letter. If you do dispute this debt or any portion thereof, we will obtain and mail you a verification of the debt or a copy of any judgment if you send us a written request within this thirty-day period. Also, upon written request within this thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

27

*This letter is an attempt to collect on a debt, and any information obtained will be used for that purpose.*

Doc. 6, Ex. L (emphasis added). The letter also suggests earlier that the Gravelings can avoid foreclosure by contacting Sirote (presumably in order to pay off the debt). *Id.* When considered altogether, this letter shows that Sirote and Ms. Rutledge wished to "communicate further with the [the Gravelings] with respect to [their] debt" in order to collect on it. 18 U.S.C. § 1492c. As the letter followed repeated injunctions by the Gravelings to cease such communications, it plausibly reveals a violation of § 1492c. For these reasons, the court will dismiss the Gravelings' FDCPA claim against Mr. Daugherty but will not dismiss such claims against Sirote and Ms. Rutledge.

## V.   Conclusion

The court will thus grant Defendants' Motions to Dismiss in this action on all counts except the Gravelings' FDCPA claims against Sirote and Ms. Rutledge. The Gravelings have stated a convoluted and vague fraud claim against Castle. Even were the claim permissible under Rule 9, its assertions are not sufficiently plausible to allow this court to infer that Castle might be liable for fraud. The Gravelings' unlawful foreclosure claim against BankUnited, on the other hand, wholly misreads Alabama law on debt validation and standing. They similarly misunderstand Alabama law in their claim against Mr. Benefield. Because neither of these claims state facts

28

upon which legal relief may be granted, the court must dismiss them both as well. Finally, the Gravelings plausibly allege that Sirote and Ms. Rutledge violated the FDCPA in acting as Coastal's debt collector, so the court will not dismiss these claims. As Mr. Daugherty's conduct does not qualify as debt collection activity, however, the Gravelings' claim against him will be dismissed. The court will enter a separate order consistent with this opinion.

**DONE** this the 27th day of August, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge