FILED
2014 Jul-29 PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES GRAVELING AND LORI GRAVELING, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SIROTE & PERMUTT and GINNY RUTLEDGE | ) ) ) | 13-CV-120-VEH |
| Defendants. | ) ) | |

## MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Sirote & Permutt, P.C. ("Sirote") and Ginny Rutledge ("Rutledge") (collectively the "Defendants") and pursuant to Fed. R. Civ. P. 56, hereby move this Court to enter Summary Judgment in their favor with respect to all remaining claims asserted by the Plaintiffs James and Lori Graveling (the "Plaintiffs" or the "Gravelings"). In support thereof, Defendants have attached the affidavit of Ginny Rutledge ("Rutledge Aff.") as Exhibit A, and further state as follows:

### INTRODUCTION

There is only one remaining issue to be decided in this case: whether the Defendants violated the Federal Debt Collection Practices Act by sending an acceleration letter to the Gravelings on behalf of Coastal States Mortgage ("CSM")

on March 12, 2012. (See Doc. 62)[1] As shown below, Sirote did not send its letter of acceleration until *after* CSM properly responded to the Gravelings' letter dated September 16, 2011 disputing their debt. It seems that the Gravelings' contention that CSM never responded is based on the faulty premise that the only appropriate response would have been to send the original Note and Mortgage, which this Court has previously determined to have been unnecessary to "validate" the Gravelings' loan, or to send a notarized statement regarding the debt, which is not required by the FDCPA. CSM did respond to the Gravelings' formal dispute notice, and the Gravelings continued to withhold payments, despite the information provided by CSM. CSM then engaged Sirote to send a formal acceleration notice to the Gravelings. Sirote did not send its letter while the loan was in dispute because CSM had previously responded to the Gravelings' dispute letters and addressed the concerns presented in the dispute letters as required by the FDCPA. Therefore, the acceleration letter was not a violation of the FDCPA and the Defendants are entitled to Summary Judgment.

---

[1] The Gravelings seem to challenge all correspondence received from Sirote, but the letter that this Court focused on in its Order was the Notice of Acceleration sent March 12, 2012. Sirote has already provided copies of its subsequent correspondence with the Gravelings, correspondence which served to validate the debt after the Gravelings responded to Sirote's March 12, 2012 letter. For example, Sirote's April 16, 2012 letter, which attached copies of the Note and Mortgage, the Mortgage assignments, Mr. Graveling's payment history, and also attached prior communication from CSM to the Gravelings, is attached as Exhibit C to Doc. 13. This Court has not presented any issue with this April 2012 validation letter or any specific letter thereafter. Instead, the March 12, 2012 letter is the letter in question.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS

1. On September 28, 2001, Plaintiff James Graveling executed a promissory note in favor of Castle Mortgage Corporation ("Castle"), whereby Mr. Graveling agreed to repay to Castle the borrowed sum of One Hundred Forty Thousand and 00/100 Dollars ($140,000.00). A copy of the Note (the "Note") as executed by Plaintiffs is attached as Exhibit 1 to the Rutledge Aff.

2. On the same day, Plaintiffs executed a mortgage, securing the Note, in favor of Castle. A copy of the Mortgage (the "Mortgage") is attached as Exhibit 2 to the Rutledge Aff. The Mortgage provides that the Mortgage and Note are freely conveyable by the Lender:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.

(Mortgage at ¶ 20.)

3. The Mortgage further provides that if Plaintiffs default under their payment obligations, then Castle, as the lender, was permitted to accelerate the debt secured by the Mortgage and exercise the power of sale contained within the Mortgage, thereby selling the property at a non-judicial foreclosure sale. (See Mortgage at ¶ 22.)

4. On October 16, 2007, Castle granted, sold, assigned, transferred, and conveyed its interest in and to the Mortgage to Coastal States Mortgage ("CSM"),

"together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued under such Mortgage." *See* Complaint, Ex. S2 (Doc 8-15). The Assignment was recorded in the Office of the Probate Judge of St. Clair County, Alabama, on November 6, 2007. As a consequence of the Assignment, CSM became entitled to enforce the Mortgage in place of Castle, and it was permitted to accelerate the debt and exercise the power of non-judicial foreclosure sale.

5.  Castle transferred the Note, without recourse, to CSM via special endorsement. *See* Note, p.3. Thus, CSM became the holder of the Note.

6.  On April 28, 2010, CSM assigned the Mortgage (although not the Note) to Mortgage Electronic Registration Systems, Inc., and this assignment was recorded in the Office of the Probate Judge of St. Clair County, Alabama, on June 28, 2010. Mortgage Electronic Registration Systems, Inc. assigned the Mortgage back to CSM on February 17, 2012, and this assignment was recorded in the Office of the Probate Judge of St. Clair County, Alabama, on March 2, 2012. *See* Complaint, Ex. S2 (Doc. 8-15).

7.  On or about September 16, 2011, Mr. Graveling sent a letter to CSM that was titled "Notice of Dispute of Alleged Debt" and demanded that CSM

provide validation of the debt and send evidence that it was the holder of Mr. Graveling's Note.[2] (Doc. 6-4)

8. In a letter dated September 28, 2011, CSM responded to Mr. Graveling's dispute letter. The letter attached a copy of the Gravelings' Note and explained that CSM had acquired the Gravelings' loan and loan servicing from Castle Mortgage in 2007. A copy of the September 28, 2011 letter is attached as Exhibit 6 to the Rutledge Aff.

9. Mr. Graveling then sent another letter disputing the debt, dated October 28, 2011, demanding the same information as the notice sent a month prior. (Doc. 6-6).

10. In a letter dated November 1, 2011, CSM explained in detail to Mr. Graveling the amounts then due on the loan. A copy of the November 1, 2011 letter is attached as Exhibit 8 to the Rutledge Aff.

11. In a letter dated November 9, 2011, CSM responded to the October 28 letter from Mr. Graveling. The response explained that the Gravelings had executed a Note to Castle Mortgage Corporation on September 28, 2001. The letter attached another copy of the Note. The letter went on to explain that CSM had acquired all right, title and interest to Mr. Graveling's loan in 2007 and had

---

[2] The letter also demanded certain activity from CSM that has no legal basis. For example, the letter demanded that CSM send a "wet ink" version of the Note and also demanded various notarized affidavits from CSM covering a variety of topics. None of these requests has a basis in the FDCPA or any other law.

notified Mr. Graveling of the same at the time of the transfer. This letter also re-attached both the September 28 letter and the letter from November 1. A copy of the November 9, 2011 letter is attached as Exhibit 9 to the Rutledge Aff.

12. The Gravelings continued to question the validity of the debt, and in a letter dated February 23, 2012, CSM explained to Mr. Graveling that CSM had already sent a copy of the Note to Mr. Graveling and had previously responded to the issues raised in Mr. Graveling's dispute letters. In this February letter, CSM included a copy of Mr. Graveling's payment history and informed Mr. Graveling that the loan was being referred to Sirote for foreclosure proceedings. A copy of the February 23, 2012 letter is attached as Exhibit 10 to the Rutledge Aff.[3]

13. On March 12, 2012, after CSM had responded on multiple occasions to Mr. Graveling's dispute letters, Sirote sent a notice of acceleration to Mr. Graveling that informed the Gravelings that CSM had elected to accelerate the balance of Mr. Graveling's loan and that a foreclosure sale had been scheduled for April 18, 2012. At the time this acceleration notice was sent, all prior disputes

---

[3] The Gravelings also sent a letter dated February 23, 2012 that asserted the CSM had failed to verify the loan. However, CSM had, in fact, responded to the dispute letters sent previously by the Gravelings. Once a party has responded to a dispute notice, it is allowed to continue communications. *See Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1278 (S.D. Ala. 2010) The Gravelings provided no basis for this cease and desist letter except for their misinformed belief that CSM had failed to respond to the dispute letters, when in fact, the Gravelings' demands/requests had previously been addressed in multiple response letters from CSM.

from Mr. Graveling had been responded to by CSM. A copy of the Notice of Acceleration is attached as Exhibit 11 to the Rutledge Aff.

## ARGUMENT

In this Court's Memorandum Opinion, dated August 27, 2013, this Court narrowed the remaining issue to the question of whether Sirote's sending a Notice of Acceleration to the Gravelings, on behalf of CSM, on March 12, 2012, was a violation of the FDCPA. (Doc. 62) As the undisputed facts above illustrate, after Mr. Graveling sent a formal notice disputing the debt (and demanding a response), CSM responded multiple times, sending multiple copies of Mr. Graveling's Note, identifying the original lender, explaining the amount then owed, and providing a payment history. The final letter from CSM was sent on February 23, 2012. As the Gravelings had stopped paying on the loan (Doc. 28, ¶ 56), Sirote was within its rights as counsel for CSM to send its letter on March 12, 2012, notifying the Gravelings that the loan was being accelerated. CSM had previously complied with the FDCPA by responding to Mr. Graveling's dispute letters; therefore, Sirote did not violate the FDCPA by sending its March 12 letter.

**I.   CSM complied with FDCPA § 1692g prior to the acceleration notice.**

The issue in this case revolves around a letter that was sent by Mr. Graveling on September 16, 2011 to CSM. This letter was titled "Notice of Dispute of Alleged Debt," and the stated purpose of the letter was to dispute the debt under

FDCPA 1692g(b). (Doc 6-4 at ¶ 3) Specifically, Mr. Graveling's letter demanded various responses and documents from CSM, including a demand that CSM "exhibit the note" and that CSM provide information about the original creditor. (Doc. 6-4) The letter also demanded various notarized statements and other information and documents to which the Gravelings were not entitled under the FDCPA (or any other law). Finally, Mr. Graveling demanded that CSM either "prove the contract" *or* "cease communicating with us as per Fair Debt Collection Practices Act 805(c)." (Doc. 6-4 at ¶ 6)

Under the FDCPA, "a debt collector has a choice: it either may choose not to verify the debt and abandon its collection efforts, or it may decide to verify the debt and resume collection activities once the requested validation has been provided." *See Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1278 (S.D. Ala. 2010) (citation omitted). In response to Mr. Graveling's letter, CSM chose to send information necessary to verify the debt owed by Mr. Graveling, instead of ceasing all debt collection activity and communications. CSM sent a letter on September 28, 2011, acknowledging receipt of Mr. Graveling's dispute notice and attaching a certified, true copy of Mr. Graveling's Note. *See* Rutledge Aff., Exh. 6. CSM's response letter explained that CSM had acquired the loan from the original lender, Castle Mortgage Company. *Id.* The attached Note verified that CSM was the current Note holder and provided validation of the Gravelings' loan. *Id.*

On October 28, 2011, Mr. Graveling followed up with a second dispute notice, insisting that the verification provided by CSM was not proper because the Note was not sent with an affidavit from CSM. (Doc. 6-6) Mr. Graveling's October letter demanded that CSM provide a sworn statement of the debt in order for the debt to be verified; however, there is no basis in the FDCPA for this assertion. CSM responded to this letter on November 9, 2011 by providing a history of Mr. Graveling's Note and attaching yet another copy of Mr. Graveling's Note. *See* Rutledge Aff., Exh. 9. This response letter explained how CSM came to hold the Note and also reattached a letter that was sent to Mr. Graveling by CSM on November 1, 2011 that detailed the amounts then due by the Gravelings. *Id.*

The Gravelings, still unsatisfied that CSM had not returned an affidavit or provided the original of the Note, neither of which was required by law, continued to dispute the debt by demanding documents to which they were not entitled under the FDCPA. On February 23, 2012, CSM sent the Gravelings a final letter, informing them that the loan had been referred to Sirote for foreclosure proceedings. *See* Rutledge Aff., Exh. 10. This letter also included a copy of Mr. Graveling's payment history. CSM complied with the mandates of the FDCPA and was therefore allowed to begin foreclosure proceedings.

**II.   Sirote did not violate the FDCPA by sending a notice of acceleration.**

This Court's main concern was whether Sirote had a duty to cease communications once Mr. Graveling disputed the debt with the September 16, 2011 letter. The issue presented in the Memorandum Opinion is whether sending the notice of acceleration on March 12, 2012 violated FDCPA § 1692c. However, as described above, in the September 16 letter, Mr. Graveling requested either that CSM verify the debt *or* cease communications. In response, CSM chose to verify the debt. Therefore, after CSM properly responded, CSM, and later Sirote, were allowed to continue to communicate with the Gravelings.[4] *Quale*, 682 F. Supp. 2d at 1278. At the time of acceleration, CSM had provided to the Gravelings: two copies of Mr. Graveling's Note, information about Mr. Graveling's original lender, information describing how CSM came to hold the Note, information regarding the amounts due on the debt, and a payment history. The Gravelings continued to claim that the debt had not been verified based on their contention that CSM was required to sign an affidavit about the debt. However, the Gravelings have failed to show why an affidavit was required to properly validate the debt. This Court has already determined that the Gravelings did not have a right to demand the production of the original, "wet-ink" version of the Note, and the Gravelings have

---

[4] The March 12, 2012 letter from Sirote was Sirote's first communication with the Gravelings. The suggestion that the Gravelings had repeatedly asked Sirote to stop communicating before this letter is false. The Gravelings did begin sending letters to Sirote *after* the March 12, 2012 letter and Sirote did respond to those letters by sending verification of the debt, but correspondence that post-dates March 12, 2012 is not at issue in this case. (Doc. ____)

provided no law to suggest that CSM's various responses to the Gravelings were legally insufficient under the FDCPA. Instead, CSM fulfilled its responsibilities under 1692g and was allowed to resume communications with the Gravelings, and Sirote, by extension, was then allowed under the FDCPA to send a Notice of Acceleration on behalf of CSM.

Sirote did not send the Notice of Acceleration while a valid dispute of debt letter was outstanding. The mortgagee, CSM, had properly responded to the demands made by the Gravelings and the Gravelings had continued to refrain from making any payments on their loan. Therefore, even assuming that Sirote's letter constituted "debt collection," Sirote was within its rights as counsel for CSM to send a Notice of Acceleration.

Finally, Sirote's actions as counsel for CSM were directed toward informing the Gravelings that the mortgagee intended to invoke the specific remedy of foreclosure. As such, this communication is permitted pursuant to § 1692c(c)(2)-(3), which provides that a debt collector may continue to communicate with a debtor "to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor" and also "to notify the consumer that the debt collector or creditor intends to invoke a specified remedy." Sirote's communications with the Gravelings were designed to alert the Gravelings that, if the Gravelings did not pay the balance of

the loan, the mortgagee intended to foreclose the property as spelled out in the Mortgage. This is permissible under the terms of § 1692c, and there was therefore no violation of this provision.

## CONCLUSION

The Gravelings' main contention that Sirote and Ms. Rutledge violated the FDCPA is based on the Gravelings' view that CSM did not respond appropriately to Mr. Graveling's many letters. However, as shown above, Mr. Graveling requested a variety of loan documentation and were provided that information by CSM on multiple occasions before the loan was referred to Sirote for foreclosure proceedings. The Gravelings contend that the responses from CSM were insufficient but provide no legal basis for this claim. Instead the Gravelings assert that the responses were insufficient because CSM did not send the original Note or sign an affidavit regarding the Gravelings' debt. These requirements do not appear in the FDCPA. CSM responded to each letter sent by the Gravelings and Sirote subsequently sent the Notice of Acceleration, after the Gravelings had been provided with verification of their debt. Under the FDCPA, CSM was within its rights to continue debt collection activity after it responded to Mr. Graveling's inquiries; therefore, it was proper for Sirote, on behalf of CSM, to send its letter on March 12, 2012, after the Gravelings' debt had been verified.

WHEREFORE, Defendants, Sirote & Permutt, PC and Ginny Rutledge, request this this Court grant Summary Judgment in favor of the Defendants because there is no genuine issue of material fact, and the Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

/s/ B. Ashten Kimbrough Seay
Stephen B. Porterfield
B. Ashten Kimbrough Seay
Attorneys for Defendants
Sirote & Permutt, P.C. and Ginny Rutledge

**OF COUNSEL:**
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel.: (205) 930-5100
Fax: (205) 930-510

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have mailed by certified mail the same to the following participants:

James F. Graveling
Lori J. Graveling
1670 Simpson Road
Odenville, Alabama 35120

                                          /s/ B. Ashten Kimbrough Seay
                                          OF COUNSEL