## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES GRAVELING AND LORI GRAVELING,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:13-cv-120-VEH** |
| | ) | |
| **SIROTE & PERMUTE, P.C., and GINNY RUTLEDGE,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF OPINION

### I.    INTRODUCTION

The plaintiffs in this lawsuit, James and Lori Graveling ("the Gravelings"), are proceeding *pro se*. The dispute arises out of a foreclosure action by former defendant (since dismissed from this case) Coastal States Mortgage, Inc. ("Coastal") on a mortgage on the Gravelings' house. (Doc. 12 at 2-3). The only remaining defendants are the law firm of Sirote & Permutt ("Sirote") and Ginny Rutledge ("Ms. Rutledge"), an attorney at Sirote[1] (collectively, "the Defendants").

The Gravelings initiated this action on January 18, 2013, by filing a motion for preliminary injunction. (Doc. 1). After being ordered by the court to do so, they filed

---

[1] Sirote and Ms. Rutledge represented Coastal.

an amended complaint. (Doc. 6). They brought six claims: separate counts for fraud against Castle Mortgage Company ("Castle") and against Coastal, a count for wrongful foreclosure against BankUnited, N.A. ("BankUnited"), a count for illegal foreclosure sale auction against Andrew Benefield ("Mr. Benefield"), a count for refusal to cease debt collecting in violation of the Fair Debt Collection Practices Act ("FDCPA") against Coastal, and a count for refusal to cease debt collecting in violation of the FDCPA against Sirote, Rutledge, and Ryan Daugherty ("Mr. Daugherty").   On August 27, 2013, the court granted a motion to dismiss the Gravelings' claims as against Castle, BankUnited, Mr. Benefield, and Mr. Daugherty. (Doc. 63). On December 4, 2013, the court dismissed with prejudice their claims against Coastal for failure to prosecute. (Doc. 82). The Gravelings' only remaining claim is for refusal to cease debt collection activities in violation of the FDCPA against Sirote and Ms. Rutledge.

Pending before the court is the Defendants' Motion for Summary Judgment on all remaining claims, which was filed on July 29, 2014. (Doc. 100). The Gravelings filed a response on August 28, 2014. (Doc. 102). The Defendants then filed a reply to the response on September 11, 2014. (Doc. 106). Accordingly, the Motion is ready for disposition and, for the reasons explained below, is due to be **GRANTED**.

## II.   STANDARD

### A.   <u>Summary Judgment</u>

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### B.   <u>Fair Debt Collection Protection Act</u>

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors . . ."15 U.S.C. § 1692(e). The FDCPA both requires and forbids

specific conduct by debt collectors. The Act "does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (per curiam) (citations omitted). Further, a single violation of the statute is sufficient to establish civil liability. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (citing 15 U.S.C. § 1692k).

In order to prevail on an FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000) (quoting *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 470 (M.D. La.1995)).

Following the court's August 27, 2013, memorandum of opinion on the Motions to Dismiss, the only issue left to be decided is the third element: whether the Defendants engaged in an action or omission prohibited by the FDCPA. Three provisions of the FDCPA are relevant for purposes of this analysis under the claims in this case. The first concerns the debt collector's obligations to provide information at the time of the initial communication with a consumer:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following

4

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

> (1) the amount of the debt;

> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

The second provision governs situations where, after receiving a notice of the debt, the consumer disputes the debt:

> If the consumer notifies the debt collector in writing within [thirty days of receiving written notice of the debt, as described in 15 U.S.C. § 1692g(a)] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C § 1692g(b).

The third provision concerns situations where the consumer <u>refuses to pay</u> the

debt or <u>demands that the collector cease communications</u>:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
>
> > (1) to advise the consumer that the debt collector's further efforts are being terminated;
> >
> > (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> >
> > (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c(c).


## III.    ANALYSIS

The Gravelings claim that Sirote and Ms. Rutledge violated the FDCPA by

continuing communications after they had disputed their debt (contra § 1692g(b)) and

after they had requested that the Defendants cease communications (contra §

1692c(c)). The Defendants do not deny that they communicated with the Gravelings.

Instead, they argue that their communications were not in violation of the FDCPA.

The Defendants make two arguments for why their communications were allowable.

6

**A.**   **The Defendants had no obligation to refrain from communicating with the Gravelings at the time that they sent the notice of acceleration**

First, the Defendants argue that they had no obligation to refrain from communicating with the Gravelings because there was not a valid dispute of debt letter outstanding at the time when they sent the March 12, 2012, notice of acceleration letter. (Doc. 100 at 11). Specifically, the Defendants allege that the Gravelings, in their September 16, 2011, letter, "demanded that [Coastal] either 'prove the contract' *or* 'cease communicating with us as per Fair Debt Collection Practices Act.'" (Doc. 100 at 8) (emphasis in doc. 100). This, the Defendants contend, gave Coastal the option to do <u>either</u> of two things: to "prove the contract" <u>or</u> to cease communications with the Gravelings. The Defendants argue that Coastal gave sufficient verification of the debt by sending copies of the note on September 28 and November 9, 2011, thereby fulfilling the requirements of the FDCPA at 15 U.S.C. § 1692g(b).

In opposition, the Gravelings deny that Coastal verified the debt. They assert that they were entitled to see the <u>original</u> note and <u>original</u> mortgage, rather than a copy. (Doc. 102 at 14-15, 18). These arguments were rejected by the court in its August 27, 2013, memorandum of opinion on the Motions to Dismiss and will not be reconsidered, as there is no legal basis for a requirement that the original documents

be provided.  (Doc. 62). The Gravelings also point to the letter sent to them by Ms.

Rutledge on March 19, 2012, which stated,

> I am writing to acknowledge receipt of your letter dated March 14, 2012,
> regarding the above-referenced property [the house then and now occupied by
> the plaintiffs]. ... We have canceled foreclosure proceedings at this time. Please
> note that we have ceased foreclosure proceedings until proper debt verification
> is provided to you.

(Doc. 102, Exhibit A) (bracketed material in Doc. 102). The Gravelings argue that this

amounts to an admission by the Defendants that proper debt verification had never

been provided to them. (Doc. 102 at 6-7). Although "until proper debt verification is

provided" could, in a vacuum, imply that the Gravelings had never received proper

verification, the evidence clearly demonstrates that the Gravelings in fact had been

provided with the FDCPA-mandated debt verification information by both Coastal (in

its correspondence on September 28, 2011, and November 9, 2011) and Sirote (in its

March 12, 2012, notice of acceleration letter).

The key to deciding this issue requires deciding whether the Gravelings (a) told

Coastal that they refused to pay the debt or to cease communications, making 15

U.S.C. § 1692c(c) applicable, or (b) disputed the debt, making 15 U.S.C. § 1692g

applicable.  In this case, the evidence is undisputed that, in the Gravelings' September

16, 2011, letter, they demanded <u>either</u> that Coastal provide verification of the debt[2] <u>or</u> cease communicating. (Doc. 6-4  at 12).  The court agrees that the Gravelings' letter gave Coastal <u>either</u> of two options, and Coastal chose one: to verify the debt. Coastal did so on September 28, 2011, by sending a certified copy of the note to the Gravelings, along with a letter explaining that Coastal had acquired the note from Castle, the original lender. (Doc. 100-3 at 19-22). When Mr. Graveling sent a second notice of dispute on October 28, 2011, reiterating the demand for the original note, affidavits, and notarized documents (doc. 6-6), Coastal sent another copy of the note and information on how Coastal had acquired the note. (Doc. 100-4 at 5). The Gravelings then sent a third letter on February 23, 2012, demanding that Coastal cease communications with them on the grounds that Coastal "had provided none of the items necessary to validate the debt requisite under law [sic]." (Doc. 6-10 at 2).

This court has already decided in its August 27, 2013, memorandum on the motions to dismiss that there is no basis under the FDCPA or other federal law for the Gravelings' demands for the original, "wet-ink" note or for sworn affidavits. (Doc. 62 at 13-17). By sending (twice) a copy of the note to the Gravelings, along with

---

[2]  As discussed above, the Gravelings demanded a variety of sworn affidavits and notarized documents not required under the FDCPA, insisting that these were necessary to "prove the contract." (*Id*. at 4-12). The FDCPA, not the Gravelings' demand, determines what is required to validate a debt.

additional information on the note's chain of transfer, Coastal fulfilled its obligations under the FDCPA, which requires debt collectors to respond to a disputed debt by sending "a <u>copy</u> of such verification" of debt. 15 U.S.C. § 1692g(b). This meant that the debt was now validated, and so no longer in dispute. Therefore, Coastal — and the attorneys it hired for foreclosure, Sirote and Ms. Rutledge — became entitled to resume collection efforts. *Id.* ("the debt collector shall cease collection of the debt . . . <u>until</u> the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector").

The Gravelings' repetition of their demands for materials not required by law to verify the debt did not thereby create another debt dispute. "Plaintiff's debt already had been verified for purposes of the FDCPA. Plaintiff cannot forestall collection efforts by repeating the same unsubstantiated assertions and thereby contend that the debt is 'disputed.' If Plaintiff were permitted to do so, debtors would be able to prevent collection permanently by sending letters, regardless of their merit, stating that the debt is in dispute. Such a result is untenable, as it would make debts effectively uncollectable." *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 410 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013). Finally, the Gravelings' letter to Coastal on February 23, 2012, telling Coastal to cease communications was explicitly <u>premised</u> on Coastal's failure to provide the <u>original</u> note and other

(unrequired-by-law) documents the Gravelings had demanded. (Doc. 6-10 at 2, ¶2, 4). For that reason, the court will not consider it to revive the Gravelings' prior demand, thereby forestalling collection yet again. Alternatively, given the language the Gravelings chose to include in this letter, the court will not consider it to be a new demand by the Gravelings that communications cease (as contemplated by 15 U.S.C. § 1692c(c)), but rather an extension of the demands for debt verification materials to which they were not entitled.

Therefore, summary judgment will be **GRANTED** to the defendants on the Gravelings' claims of FDCPA violations.[3]

### B.   <u>The notice of acceleration was permitted as a specific exception under the FDCPA</u>

The Defendants also contend that even if the Gravelings' February 23, 2012,

---

[3] In one paragraph in their opposition to the motion for summary judgment, the Gravelings also allege that the Defendants violated the FDCPA's requirements at 15 U.S.C. § 1692g(a) that debt collectors send written notice containing information about the creditor and statements about the consumer's rights within five days of the debt collector's initial communication with the consumer. (Doc. 102 at 7). They argue that Sirote and Ms. Rutledge failed to send the written notice within five days of their initial communication, the March 12, 2012, notice of acceleration. (*Id*.). This argument is plainly incorrect. The Defendants' notice of acceleration contained the two pieces of information required by the statute (the amount of the debt and the name of the creditor) as well as the three statements required under 15 U.S.C. § 1692g(a)(3)-(5). (Doc. 100-4 at 24). Therefore, this argument is without merit.

letter obligated the Defendants to cease debt collection communications under 15 U.S.C. § 1692c(c), their notice of acceleration was allowed by one of two exceptions in the FDCPA. (Doc. 100 at 11-12). The FDCPA allows a debt collector to continue communications related to the debt in order "to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor" or "to notify the consumer that the debt collector or creditor intends to invoke a specified remedy." *Id*. at § 1692c(c)(2)-(3).

The Defendants' March 12, 2012, notice of acceleration read,

YOU ARE HEREBY NOTIFIED that you are in default of the terms of the Promissory Note and Mortgage. . . By virtue of default in the terms of said Note and Mortgage, Coastal [] hereby accelerates to maturity the entire remaining unpaid balance of the debt . . . and the amount due and payable as of the date of this letter is $125,950.17. This payoff amount may change on a daily basis. If you wish to pay off your mortgage, please call our office at the number above to obtain the updated figure.

We are at this time commencing foreclosure under the terms of the Mortgage, and enclosed is a copy of the foreclosure notice to be published in The Clarion. Please note that the foreclosure sale is scheduled for April 18, 2012. If you wish to avoid losing the subject property, you must contact us immediately; otherwise the foreclosure sale will take place as set forth in the publication notice, and we will take legal action to obtain possession of the subject property. [sentence omitted]

We will assume this debt to be valid unless it is disputed within thirty days after you receive this letter. If you do dispute this debt or any portion thereof, we will obtain and mail you a verification of the debt or a copy of any judgment if you send us a written request within this thirty-day period. Also, upon written request within this thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor. This letter

12

is an attempt to collect a debt, and any information obtained will be used for that purpose.

(Doc. 100-4 at 24).

In this case, it is clear that the first two paragraphs invoke a "specified remedy," the acceleration and foreclosure process provided for in the Gravelings' mortgage. The third paragraph, though, gives the statements required for an initial communication between a debt collector and a consumer under the FDCPA. *See* 15 U.S.C. § 1692g(a). Additionally, it states, "this letter is an attempt to collect a debt." This language has led the Gravelings to argue that the letter was a debt-related communication prohibited by 15 U.S.C. § 1692c. (Doc 102 at 5).

In its August 27, 2013, memorandum denying these Defendants' motion to dismiss, the court held that "one purpose of the letter was certainly to warn the Gravelings of the scheduled foreclosure on their home. But [] another clear purpose was to collect on the debt." (Doc. 62 at 27). It is unnecessary for the court to decide this issue in light of the court's determination in the previous section that the Defendants had repeatedly validated the debt, and that the Gravelings could not repeatedly forestall collection, and, alternatively, that, in light of the language in their February 23, 2012, letter, the Gravelings did not effectively request that Coastal cease communications (within the meaning of 15 U.S.C. § 1692c).

## V.    CONCLUSION

For all of the foregoing reasons, the Defendants' motion for summary judgment is due to be **GRANTED**.[4] As a result, the Defendants' motion to strike is **MOOT**. The court will enter a separate final judgment order consistent with this memorandum opinion.[5]

**DONE** and **ORDERED** this the 15th day of October, 2014.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[4]  Because the contested material issues on summary judgment are straightforward, the Gravelings' petition to present oral argument is due to be **DENIED**. Further, the Gravelings' motion for an extension of time to complete discovery is due to be **DENIED**. The court entered a scheduling order on March 24, 2014, providing that "all discovery must be commenced in time to be completed by October 10, 2014." The parties had ample time to conduct discovery, and the Gravelings have given no adequate reason to amend the scheduling order.

[5] The Gravelings have also filed a "motion" which effectively asks this court to explain the law and/or rules of procedure to them. (Doc. 111). The court is not permitted to act as *de facto* counsel for a *pro se* party. *GJR Investments, Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). Accordingly, this motion is **DENIED**.